UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TEJASH SANCHALA, IN HIS CAPACITY AS THE EXECUTIVE DIRECTOR OF THE WESTCHESTER COUNTY FAIR HOUSING BOARD, on the complaint of JOAN C. GARRIS,

Plaintiff,

v.

THE KEARNEY REALTY AND DEVELOPMENT GROUP, INC., CROSSROADS AT BALDWIN PLACE HOUSING DEVELOPMENT FUND COMPANY, INC., CROSSROADS AT BALDWIN PLACE LIMITED PARTNERSHIP, CROSSROADS AT BALDWIN PLACE ASSOCIATES, LLC.,

Defendants.

**COMPLAINT**

Docket No.
_____

## PRELIMINARY STATEMENT

1.  Tejash Sanchala, in his capacity as the Executive Director of the Westchester County Fair Housing Board ("FHB" or "Plaintiff"), brings this action on behalf of Joan C. Garris who alleges that, between June 2019 and March 2020, her neighbor ("R.B.")[1] repeatedly harassed Garris because of her race, color and/or ethnicity, and that she duly reported her neighbor's abuse to the owners of the senior living residence where she resides - Crossroads at Baldwin Place Housing Development Fund Company, Inc. ("Crossroads HDFC"), Crossroads at Baldwin Place, LP ("Crossroads LP") and Crossroads at Baldwin Place Associates, LLC ("Crossroads LLC")—together with the building's property manager, The Kearny Realty and Development Group, Inc. ("Kearny Realty"). Thereafter, Crossroads HDFC, Crossroads LP, Crossroads LLC and Kearny Realty became aware of the harassment on their property and failed to act. Defendants' actions violate Federal and County fair housing laws.

---

[1] The neighbor is not a named party in this action. The neighbor's initials shall be used herein.

2. Plaintiff, by and through his attorney, John M. Nonna, Esq., Westchester County Attorney, by Karen T. Beltran, Esq., Senior Assistant County Attorney, of Counsel, complaining of Defendants Crossroads HDFC, Crossroads LP, Crossroads LLC, and Kearny Realty, (collectively, "Defendants"), respectfully alleges upon information and belief as follows:

## PARTIES

3. At all times hereinafter mentioned, the County of Westchester was and is a municipal corporation, duly organized and existing under the laws of the State of New York.

4. At all times hereinafter mentioned, the Westchester County Human Rights Commission ("Commission") is a board established by § 700.08 of the Westchester County Human Rights Law.

5. At all times hereinafter mentioned, the Westchester County Fair Housing Board is a board established by § 700.24 of the Westchester County Fair Housing Law ("WCFHL").

6. Crossroads LP is co-owner of Crossroads at Baldwin Place located at 57B Route 6, Baldwin Place, Westchester County, New York 10505 (the "Subject Property"). The Subject Property is a senior residence complex for people over 55 years of age.

7. Crossroads LLC is co-owner of the Subject Property.

8. Crossroads HDFC is a non-profit corporation and co-general partner of the Subject Property.

9. Kearny Realty is the property manager at the Subject Property.

10. The Subject Property constitutes a "dwelling" within the meaning of § 3602 of 42 U.S.C. § 3601 *et seq.*, the Federal Fair Housing Act (the "Act"). The Subject Property is not exempt under the Act.

11. The Subject Property also constitutes a "housing accommodation" within the meaning of § 700.20 (I) of the WCFHL. The Subject Property is not exempt under the WCFHL.

## JURISDICTION & VENUE

12. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3612(o).

13. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 3612(o).

## LEGAL AUTHORITY

### A. Federal Law

15. It is unlawful to make unavailable, or otherwise deny, a dwelling, because of, *inter alia*, race and/or color, by failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it. 42 U.S.C. § 3604(a). 24 C.F.R. § 100.7 (a)(1)(iii).

16. It is unlawful to discriminate against any person in the provision of services or facilities in connection with a dwelling because of, *inter alia*, race and/or color. 42 U.S.C. § 3604(b). 24 C.F.R. § 100.65.

### B. Westchester County Fair Housing Law

17. It is unlawful to make unavailable, or otherwise deny, a housing accommodation, because of, *inter alia*, race, color and/or ethnicity, by failing to take prompt action to correct and

end an unlawful discriminatory housing practice by a third-party, where the person knew or should have known of the discriminatory conduct and had the power to correct it.. WCFHL § 700.21(A)(2).

18.  It is unlawful to discriminate against any person in the provision of services or facilities in connection with a housing accommodation because of, *inter alia*, race, color, and/or ethnicity. WCFHL § 700.21(A)(4).

## RELEVANT FACTS

### I. Procedural Background

19.  On March 26, 2020, pursuant to § 700.28(A)(3) of the WCFHL, Garris filed a Verified Complaint with the FHB alleging that Defendants violated, and were continuing to violate, § 700.21 (A) of the WCFHL. On July 17, 2020, pursuant to § 700.28(B) Garris filed an Amended Verified Complaint (the "Complaint") to correct Defendant Kearny Realty's name and to add Crossroads HDFC as a Respondent therein.

20.  Pursuant to a work-sharing agreement (the "Agreement") between U.S. Department of Housing and Urban Development ("HUD") and the Commission, and pursuant to § 810 of the Act, the Complaint was forwarded to, and dual-filed with, HUD on April 9, 2020.

21.   Pursuant to the Agreement, both complaints (i.e., Westchester County Complaint, Case No. 2020-HRCH-1975 and HUD File No. 02-20-5628-8) (collectively, the "Complaints") were concurrently investigated by the FHB.

22.  On or about April 23, 2020, Defendants submitted a Position Statement in response to the Complaints.

23.  Pursuant to § 700.28(F) of the WCFHL, on July 26, 2020, a Determination was issued, finding that there existed Probable Cause to support the allegations of the Complaints.

24. On May 5, 2022, a Notice of Referral and Notice of Hearing were issued to the parties.

25. Pursuant to § 700.29 (A) of the WCFHL, on May 17, 2022, Defendants elected to have the fair housing claims on which Probable Cause was found decided in a civil action in lieu of an administrative hearing.

26. On September 27, 2022, the FHB authorized the Westchester County Attorney ("County Attorney") to bring this civil proceeding pursuant to § 700.29(A)(2) of the WCFHL, providing the County Attorney thirty (30) days in which to initiate this proceeding. As such, this action is being timely filed.

II. **Factual Background**

27. Joan C. Garris is Black and has been a resident at the Subject Property since on or about August 31, 2018.

28. R.B., a White individual, was a resident of the Subject Property at all times relevant to this Complaint. R.B's apartment was across the hallway from Garris' apartment.

29. Beginning on or about June 2019, Garris' neighbor, R.B., began to abuse and harass Garris as follows:

   a. On several occasions, R.B. called Garris racial slurs including, but not limited to, "n***er," "f***ing n***er," "dirty, Black n***er," and stated "n***ers are trash, so they get trash."

   b. Because of Garris' race, color and/or ethnicity, R.B. left household trash at her doorstep multiple times.

   c. Garris observed R.B. spitting on her car while using a racial slur.

d. Garris alleges that, because of her race, color and/or ethnicity, R.B. left harassing notes on her door.

e. Garris alleges that, because of her race, color and/or ethnicity, R.B. knocked over her outdoor flowerpots.

f. Garris alleges that, because of her race, color and/or ethnicity, R.B. applied glue to Garris' apartment door handle and to the carpet outside her apartment.

g. Garris alleges that, because of her race, color and/or ethnicity, R.B. spread a rumor that Garris is an alcoholic and that R.B. made other false statements.

h. Garris further alleges that R.B. enlisted her son in her discriminatory harassment of Garris.

i. Garris further alleges that R.B. enlisted her paramour in her discriminatory harassment of Garris.

j. Because of her race, color, and/or ethnicity, Garris alleges that she was subjected to constant harassment in her comings-and-goings after R.B. placed a camera in the hallway.

k. R. B.'s discriminatory harassment intensified over time.

l. Garris made many attempts to communicate with Defendants regarding her documented complaints about R.B.'s harassment.

m. Defendants failed to respond to Garris' requests for updates regarding her complaints.

n. Defendants were aware that R.B. had a history of racial harassment at the Subject Premises.

30. During the course of the FHB's investigation into the Complaints, approximately six (6) witnesses were interviewed, including several neighbors and staff of the Subject Property.

31. During the course of the FHB's investigation into the Complaints, neighbors corroborated Garris' discriminatory harassment allegations, including R.B.'s repeated use of racial slurs and the use of doorway video camera to record hallway activity. On at least once occasion, law enforcement became involved due to R.B.'s behavior.

32. Neighbors also reported their own complaints, including, *inter alia*, R.B.'s use of racial slurs.

33. The Subject Property staff reported they were aware of R.B.'s discriminatory harassment of Garris as well as other residents. One staff person acknowledged not knowing how to respond to Garris' discrimination claims.

34. During the course of the investigation, Defendants' admitted that Garris made complaints about R.B.'s discriminatory harassment. Defendants maintained, however, that they appropriately addressed Garris' complaint by: issuing multiple lease violations against R.B. for interfering with the rights and quite enjoyment of other residents and installing a video camera in the hallway; notifying R.B.'s rental assistance provider of the lease violations; and meeting with R.B. directly to discuss complaints by Garris and other residents. Furthermore, Defendants assert that they offered Garris the opportunity to move to another building managed by Defendants.

35. During the course of its investigation, the Fair Housing Board obtained a copy of the Move-In Packet and Lease provided to all residents of the Subject Property.[2]

---

[2] Both the Move-In Packet and Lease are signed by Garris however each document is presumed to be the same for all Crossroads at Baldwin Place residents.

36. The Move-In Packet and Lease delineate tenant protections including protections that were violated by R.B.

37. The Move-In packet and Lease describe procedures and consequences for violations of the Lease and for unlawful behavior.

38. During the course of the investigation, it was found that Defendants were unresponsive to verbal and written complaints despite its legal obligation to respond or take action. Furthermore, Defendants maintained incomplete and inaccurate records.

39. Plaintiff maintains that Defendants failed to act despite knowledge of R.B.'s pattern of discriminatory harassment towards Garris.

40. Plaintiff alleges that Defendants' offer to allow Garris to move to another Crossroads at Baldwin Place apartment was at Garris' expense and therefore it was not a reasonable offer.

A. **Lease Provisions**

41. The Lease mandates that tenants agree not to "interfere with the rights of other tenants to live in their apartments in peace and quiet" and that "[o]wner agrees to do nothing which would prevent or interfere with tenant's legal use of the apartment."

42. The Lease states that tenants will be "notified of violations…" and "[v]iolation of any of the provisions…which do not cease within 10 days of …notice will result in termination of the lease. No further notice or opportunity will be given to the tenant prior to termination of … lease." The Lease mandates tenants to agree to not engage in "[any] unlawful activity."

43. The House Rules and Regulations in the Lease state, "[a] major consideration of the Owner in the tenant selection process was the ability of the Tenant to be considerate and mindful of his or her fellow tenants."

44. The Move-in Packet demands "[n]o tenant or guest shall engage in illegal activity…"; that "[a]ll tenants are responsible for the cleaning the area directly in front of their unit"; and "[d]o not leave garbage in front of your door."

B. **Lease Violations and Defendants' Responses**

45. Garris and several witnesses reported R.B.'s discriminatory harassment of Garris, based on her race, color and/or ethnicity, to Defendants or their agents by verbally informing them, filing incident reports with Defendants or their agents, and/or in other written forms to Defendants or their agents.

46. R.B. violated the lease provisions regularly and Defendants failed to respond in an appropriate manner despite R.B.'s discriminatory behaviors.

47. Defendants did not terminate RB's lease when R.B. did not cease to discriminate and harass Garris because of her race, color and/or ethnicity.

48. Defendants claim that they issued multiple Lease Violations. The two Lease Violations that were provided during the course of investigation, however, did not indicate their issuance was related to the discriminatory conduct towards Garris.

49. Defendants claim that they met with R.B. to discuss the violations, however, the FHB's investigation concluded that there was only one meeting with R.B. on or about October 18, 2019, wherein R.B. denied using racial slurs. The investigation found that Defendants did not attempt, or actually take, further action such as interviewing other residents or potential witnesses.

50. After October 19, 2019, Defendants received additional complaints of racial discrimination and harassment by R.B., but again failed to act definitively and appropriately pursuant to the Lease.

51. On or about December 2020, after a prolonged period of harassment and subsequent to the FHB's finding of Probable Cause, R.B. moved out of the Subject Property under unknown circumstances.

## AS AND FOR A FIRST CAUSE OF ACTION

52. Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

53. Defendants violated subsection 42 U.S.C. § 3604(a) of the Act by making unavailable, or otherwise denying, a dwelling, because of race and/or color, by failing to take prompt action to correct and end a discriminatory housing practice by a third-party, where they knew, or should have known, of the discriminatory conduct and had the power to correct it. See also 24 C.F.R. § 100.7 (a)(1)(iii).

## AS AND FOR A SECOND CAUSE OF ACTION

54. Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

55. Defendants violated subsection 42 U.S.C. § 3604(b) in the provision of the services or facilities in connection with the Subject Property because of race and/or color. Also see 24 C.F.R. § 100.65.

## AS AND FOR A THIRD CAUSE OF ACTION

56. Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

57. Defendants violated § 700.21(A)(2) of the WCFHL by making unavailable, or otherwise denying, a housing accommodation, because of Garris' race, color and/or ethnicity, by failing to take prompt action to correct and end a discriminatory housing practice by a third-party,

where they knew, or should have known, of the discriminatory conduct and had the power to correct it.

## AS AND FOR A FOURTH CAUSE OF ACTION

58. Plaintiff repeats, re-alleges, and incorporates by reference all of the prior allegations of this pleading as if fully set forth at length herein.

59. Defendants violated § 700.21(A)(4) of the WCFHL in the provision of services or facilities in connection with a housing accommodation because of Garris' race, color, and/or ethnicity.

**WHEREFORE**, it is respectfully requested that this Honorable Court enter Judgment in favor of Plaintiff Tejash Sanchala in his capacity as the Executive Director of the Westchester County Fair Housing Board, on the complaint of Joan C. Garris, pursuant to 42 U.S.C. §§ 3604(a), 3604(b), 24 C.F.R §§ 100.65, 100.7 (a)(1)(iii), Westchester County Fair Housing Law §§ 700.21(A)(2) and (A)(4) and prays that an Order be issued that:

 a. Declares that the discriminatory housing practices of Defendants, as set forth above, violated the Act, as amended, 42 U.S.C. § 3601, *et seq*. and Westchester County Fair Housing Law;

 b. Requiring Defendants to take all such affirmative action that the Honorable Court finds to be necessary in order to remedy Defendants' discriminatory conduct;

 c. Awarding such damages that will fully compensate Garris for the damages caused by Defendants' discriminatory conduct;

 d. Awarding such damages that will fully compensate Plaintiff for the expenditure of resources in prosecuting this Complaint;

  e. Awarding the maximum civil penalty against each Defendant for each violation of the Act and Westchester County Fair Housing Law committed;

  f. Awarding costs to be paid by Defendants in the form of reimbursement for actual expenses incurred and reasonable attorneys' fees; and

  g. Awarding such other and further relief that this Honorable Court may deem just and proper.

DATED: White Plains, New York  **JOHN M. NONNA**
     October 27, 2022    Westchester County Attorney
               *Attorney for Plaintiff*

              By: /s/ Karen Beltran (4468294)
                 Karen Beltran
                 Sr. Assistant County Attorney, of Counsel
                 Michaelian Office Building
                 148 Martine Avenue, Room 600
                 White Plains, New York 10601
                 T: (914) 995-3596
                 F: (914) 995-3132
                 KTB1@westchestergov.com